IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**GENERAL STAR INDEMNITY CO.,**          CASE NO. 3:22 CV 658

    Plaintiff,

    v.                                                          JUDGE JAMES R. KNEPP II

**1001 STARR INVESTMENTS, LLC,**

    Defendant.                              **MEMORANDUM OPINION AND ORDER**

## INTRODUCTION

Currently pending in this insurance contract case are two motions to dismiss. First, Plaintiff General Star Indemnity Company's ("General Star") Motion to Dismiss Defendant 1001 Starr Investment, LLC's ("1001 Starr") Counterclaim (Doc. 16), which 1001 Starr opposed (Doc. 22), and to which General Star replied (Doc. 23).[1] Second, Third-Party Defendant AmWINS Access Insurance Services, LLC's ("AmWINS") Motion to Dismiss 1001 Starr's Third-Party Complaint (Doc. 38), which 1001 Starr opposes (Doc. 50), and to which AmWINS replied (Doc. 53).

Jurisdiction is proper under 28 U.S.C. § 1332.

For the reasons discussed below, the Court grants in part and denies in part General Star's Motion to Dismiss 1001 Starr's Counterclaim (Doc. 16); and grants AmWINS's Motion to Dismiss 1001 Starr's Third-Party Complaint (Doc. 38).

---

1. 1001 Starr also filed a Motion for Leave to File a Sur-Reply (Doc. 28); General Star opposed (Doc. 29).

**BACKGROUND**

Complaint

In its Complaint, General Star seeks a declaratory judgment that it properly rescinded a commercial property insurance policy issued by General Star to 1001 Starr based on material misrepresentations in the application for that policy. (Doc. 1, at ¶¶ 3, 5). A death and fire occurred at the subject property on January 11, 2022, and 1001 Starr submitted a property claim to General Star. *Id.* at ¶ 4.

General Star attaches two documents, an "Acord Commercial Insurance Application" and an "AmWINS Access Insurance Services Habitational Risk Supplement Form", dated November 12 and 13, respectively. *Id.* at ¶ 9; *see also* Doc. 1-2. These forms list the policy applicant as "1001 Starr Investments, LLC" (Doc. 1-2, at 2, 4, 6, 8) and are signed by "Producer" or "Retail Agent" John M. Crider (*id.*, at 2, 10). The forms also contain signatures on lines indicating the "Applicant's Signature". *See id.*. On the Habitational Risk Supplement, this person is identified as the "Owner." *Id.* at 10.

The Commercial Insurance Application contains a description of premises indicating the location is "mixed use commercial and apartments" with "two retail tenants below (restaurant and a real estate office) and (2) two-bedroom apartments above." *Id.* at 2. The Habitational Risks Supplement form indicates, under "General Occupancy Information", that the building is a "Dwelling (1-4 family)", and "Other: retail". *Id.* at 8. The box for "Boarding or Rooming House" is not checked. *See id.*

The Habitational Risks Supplement contains the following language immediately above the Applicant's signature line:

> **APPLICANT'S WARRANTY STATEMENT**
> I warrant that the information in this Application, and any amendments or modifications to this Application are true and correct. I acknowledge that the information provided in the Application is material to acceptance of the risk and the issuance of the requested policy by Company. I agree that any claim, incident, occurrence, event, or material change in the Applicant's operation taking place between the date this application was signed and the effective date of the insurance policy applied for which would render inaccurate, untrue or incomplete, any information provided in this Application, will immediately be reported in writing to the Company and the Company may withdraw or modify any outstanding quotations and/or void any authorization or agreement to bind the insurance. Company may, but is not required, to make investigation of the information provided in this Application. A decision by the Company not to make or to limit such investigation does not constitute a waiver or estoped of Company's rights.
>
> **FRAUD STATEMENT**
> Any person who knowingly presents a false or fraudulent claim for payment of a loss or benefit or knowingly presents false information in an application for insurance may be guilty of a crime and may be subject to fines and confinement in prison.

*Id.* at 10. Immediately beneath the applicant's signature, and immediately above the agent's signature, is the following statement:

> **The undersigned hereby warrants and certifies that all information contained herein is correct; that this form was completed and then signed by the Applicant; that a completed copy hereof has been given to the Applicant; and that the undersigned is retaining a duplicate signed copy hereof.**

*Id.* (emphasis in original).

General Star issued a commercial property policy. (Doc. 1, at ¶ 12); *see also* Doc. 1-1 (policy).[2] That policy contained "Common Policy Conditions" including the following:

> **F. Representations on Application Warranty**
>
> The following representations on application warranty applies to all Coverage Parts attached to this policy.
>
> By accepting this policy you agree, represent and warrant that:

---

2. The "Producer" of this policy is identified as "AMWINS ACCESS INS. SERVICES LLC." (Doc. 1-1, at 4).

1. The statements and information contained in the application for insurance, including all statements, information and documents accompanying or relating to the application are:

   (a) Accurate and complete and no facts have been suppressed, omitted or misstated; and

   (b) Material to us, and we have issued this policy in reliance upon them;

2. Any failure to disclose the information requested in the application for insurance, whether by omission or suppression, or any misrepresentation in the statements and information contained in the application for insurance, including all statements, information and documents accompanying or relating to the application, renders coverage for any claim(s) null and void and entitles us to rescind the policy from its inception;

3. The application for this policy is incorporated and made part of the policy by reference.

(Doc. 1-1, at 7-8).

General Star asserts 1001 Starr, contrary to the application's assertions, operated a boarding or rooming house on the property. (Doc. 1, at ¶ 14). General Star contends it "first received in its system information" that 1001 Starr was operating a boarding or rooming house on February 8, 2022, in the form of an AmWINS Underwriting Survey Report. *Id.* at ¶ 15; Doc. 1-3 (Report). The AmWINS Report lists an "interview date" of December 1, 2021, and describes the building as a "mixed use two story building" with a "boarding home" in the upper unit, which, at the time of the inspection, had nine units occupied. (Doc. 1-3, at 2); *see also* Doc. 1-3, at 3 ("The upper unit is a boarding home. Nine units were currently occupied. The unit has a shared shower area and shared kitchenette.").

General Star asserts it does not insure rooming or boarding houses and would not have issued the policy if it knew 1001 Starr was operated as such. (Doc. 1, at ¶ 16). On April 22,

4

2022, General Star notified 1001 Starr that it was rescinding the policy and enclosed a check for all premiums paid. *Id.* at ¶ 17; Docs. 1-4 and 1-5.

General Star brings a single claim for declaratory relief / recission. (Doc. 1, at ¶ 18-25).

Answer / Counterclaim

1001 Starr's Answer denies the allegations in the Complaint that it signed the application forms for the policy. *See* Doc. 11, at 3-4 ("Insofar as an authorized member of [1001 Starr] did not sign the 'Commercial Insurance Application' and the 'Habitual Risks Supplement' forms, [1001 Starr] denies the allegations set forth in numbered paragraph 9 of [General Star's] Complaint for Recission" and stating similar in answer to paragraphs 10 and 11).

The Answer further denies the allegation in the Complaint regarding operation of the property as a boarding or rooming house: Complaint – "14. On November 15, 2021 and continuing at least through January 11, 2022, [1001] Starr operated a boarding or rooming house on the property." (Doc. 1, at 6); Answer – "To the extent Plaintiff has not defined the terms 'boarding' or 'rooming house' the Defendant denies the allegations set forth in numbered paragraph 14 of Plaintiff's Complaint for Recission." (Doc. 11, at 5).

1001 Starr brings a Counterclaim against General Star. The Counterclaim asserts:

> [General Star] issued a commercial policy of insurance to [1001 Starr] with effective dates from November 15, 2021 to November 15, 2022. Within sixty (60) days thereafter, an incident occurred at the real property insured under the policy triggering benefits thereunder but [General Star] has refused to pay policy benefits to [1001 Starr] or to otherwise honor its other contractual responsibilities under the policy.

*Id.* at 9. It contains three claims based on General Star's denial of coverage under that policy: Breach of Contract (Count 1), Bad Faith (Count 2), and Declaratory Judgment (Count 3). (Doc. 11, at 10-13). It contends the policy at issue was only potentially voidable, not *void ab initio*, citing caselaw. *Id.* at 13. The Counterclaim further contains two counts for agency, contending

Toledo Insurance Agency and John M. Crider (Count 4) and AmWINS Access Insurance Services, LLC (Count 5) were agents of General Star at all relevant times and General Star is therefore bound by their actions. *Id.* at 13-16. In Count Four of the Counterclaim, 1001 Starr asserts:

> 30. At all times material hereto, Third-Party Defendants Toledo and Crider were agents of Plaintiff.
>
> 31. On or about November 12, 2021, Toledo via Crider completed and then signed the Defendant/Counterclaimant's member's name to the application for insurance with Plaintiff.

(Doc. 11, at 14). The agency counts seek a "declaratory or other judgment that the policy was in effect on January 11, 2022, remains in effect at present, and its benefits and coverages must be paid and/or made fully available to Defendant/Counterclaimant by Plaintiff". *Id.* at 14, 16.

Third-Party Complaint

1001 Starr also brings a Third-Party Complaint against Toledo Insurance, Crider, and AmWINS. (Doc. 11, at 16-21). It incorporates by reference the allegations in the Counterclaim. *Id.* at 16. 1001 Starr asserts all Third-Party Defendants were agents of General Star, but brings the Third-Party Complaint in the alternative "should such agency be defeated or diminished, in whole or part, and/or should Plaintiff be successful on its Complaint for Recission." *Id.* at 17.

As is relevant to the pending motion[3], in Count Three, 1001 Starr brings a negligence claim against AmWINS; it asserts AmWINS owed 1001 Starr a duty "to timely inspect the subject premises and to carefully review and compare the information contained in the ACORD Commercial Insurance Application and Habi[tational] Risks Supplement with its findings from its Underwriting Survey Report completed on or about December 2, 2021." *Id.* at 20-21.

---

3. There is no motion to dismiss Counts One or Two of the Third-Party Complaint.

6

**STANDARD OF REVIEW**

When deciding a motion to dismiss under Federal Civil Rule 12(b)(6), the Court tests a claim's legal sufficiency. Although a complaint (or counterclaim) need not contain "detailed factual allegations," it requires more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, a claim survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

**DISCUSSION**

General Star Motion to Dismiss (Doc. 16)

General Star moves to dismiss all causes of action asserted in 1001 Starr's Counterclaim, arguing each fails to state a claim upon which relief can be granted. For the reasons stated below, the Court grants the motion as to Count Five of the Counterclaim, but denies it as to Counts One through Four.

*Counts One to Three*

In moving to dismiss Counts One to Three of the Counterclaim (claims under the policy), General Star contends it was entitled to rescind and void the policy *ab initio* based on 1001 Starr's material misrepresentations, and as such, 1001 Starr cannot bring any claim under the policy. It further asserts that because Crider was 1001 Starr's agent as a matter of law at the time

7

he completed the application, 1001 Starr is bound by his assertions in the application form. It further contends:

> 1001 Starr cannot have it both ways. If the application was not properly signed, verifying that the information in the application was true and correct, then the insurance policy would never have gone into effect, since there would not have been a complete application. If the policy never went into effect, there would be no coverage for the January 11, 2022 loss. If the application was signed by an authorized agent, then 1001 Starr submitted an application with material misrepresentations, allowing General Star to void it *ab initio*.
>
> 1001 Starr cannot avail itself of the policy benefits if it does not bind itself to the application.

(Doc. 16, at 6); *see also* Doc. 16, at 14 ("Inconsistently, 1001 Starr's counterclaim seeks not only to demonstrate that the General Star policy did not come into force and effect, but also to enforce the General Star policy.").

1001 Starr responds that Crider was General Star's agent at the time of the alleged misrepresentations, and thus General Star was not entitled to rescind.

The Court starts with the factual allegations of the Counterclaim, as these are what the Court must take as true for purposes of a motion to dismiss. In its Counterclaim, 1001 Starr asserts "[General Star] issued a commercial policy of insurance to [1001 Starr] with effective dates from November 15, 2021, to November 15, 2022 . . . [and] an incident occurred at the real property insured under the policy triggering benefits thereunder but [General Star] has refused to pay policy benefits to [1001 Starr] or to otherwise honor its other contractual responsibilities under the policy." (Doc. 11, at 9). It further asserts: "Even if the Defendant/Counterclaimant's information regarding the nature of the property was inaccurate (a negligent misrepresentation at best), *which the Defendant/Counterclaimant does not concede* . . . the policy would only potentially render the policy voidable not *void ab initio* under Ohio law." (Doc. 11, at 13) (emphasis added). Further, 1001 Starr's Answer denies the allegation in the Complaint regarding

8

whether it operated the property as a boarding or rooming house: Complaint – "14. On November 15, 2021 and continuing at least through January 11, 2022, Starr operated a boarding or rooming house on the property." (Doc. 1, at 6); Answer – "To the extent Plaintiff has not defined the terms 'boarding' or 'rooming house' the Defendant denies the allegations set forth in numbered paragraph 14 of Plaintiff's Complaint for Recission." (Doc. 11, at 5).

General Star's arguments for dismissal of the policy-based claims are built upon foundational assumptions that (1) 1001 Starr operated a boarding or rooming house and (2) there was a material misrepresentation in the application. But the Court finds it cannot make these determinations on the pleadings. The policy-based counts of the Counterclaim sufficiently plead facts supporting a plausible claim for relief.[4] As such, the Court denies General Star's motion to dismiss Counts One through Three of the Counterclaim.

*Count Four – Agency of Crider / Toledo Insurance*

In Count Four of the Counterclaim, 1001 Starr seeks a declaratory judgment that the policy was in effect at the time of the loss and coverage is owed, based on assertions that Crider and Toledo Insurance were General Star's agents at the time of the alleged misrepresentations.

---

4. The Court recognizes that for purposes of a motion to dismiss a counterclaim, it must take as true the allegations in the Counterclaim, and finds the Counterclaim pleads that a contract in the form of an insurance policy existed. *See* Doc. 11, at 9. It also recognizes that Federal Civil Rule 8(d) permits pleading inconsistent claims or defenses. Nevertheless, the Court notes that in both its Answer and its Counterclaim (Count Four), 1001 Starr asserts that neither it, nor any agent on its behalf, signed the application for the insurance policy. *See* Doc. 11, at 3-4 (answering: "Insofar as an authorized member of Defendant did not sign the "Commercial Insurance Application" and the "Habitual Risks Supplement" forms, Defendant denies the allegations set forth in numbered paragraph 9 of Plaintiff's Complaint for Recission" and stating similar in response to paragraphs 10 and 11); Doc. 11, at 14 (asserting that Toledo Insurance and Crider were General Star's agents and that "Toledo via Crider completed and then signed the Defendant/Counterclaimant's member's name to the application for insurance with Plaintiff."). If the evidence bears out these assertions, the Court observes that this would appear to be a serious impediment to 1001 Starr's ability to attempt to recover policy benefits under a contract it seemingly asserts it never bound itself to.

9

(Doc. 11, at 14). General Star moves to dismiss this count, asserting that Crider and Toledo were 1001 Starr's agents at the time of the alleged misrepresentations.

General Star filed a Motion for Judicial Notice to accompany its Motion to Dismiss. *See* Doc. 17. It requests the Court take judicial notice of the Articles of Organization for Toledo Insurance Agency, LLC (Doc. 17-1) and the Ohio Department of Insurance Individual License Details for John Mark Crider (Doc. 17-2). *See id.* General Star seeks to have the Court consider these documents to show Crider is a member of Toledo Insurance, Crider has been appointed to represent more than one insurer, and as such, is a broker under Ohio law, and Crider "is not now and was not at any time in the past appointed to write business for General Star". (Doc. 16, at 14). In response, 1001 Starr "acknowledges that Toledo and Crider were independent agents that represented multiple insurance companies" but "does not . . . concede any conclusions or inferences therefrom including, but not limited to, whether General Star . . . is a licensed insurer in the state of Ohio, which it appears it is not.". (Doc. 22, at 8). Because the documents at issue are public records, and not in reasonable dispute, the Court grants the Motion for Judicial Notice (Doc. 17). *See Jones v. City of Cincinnati,* 521 F.3d 555, 562 (6th Cir. 2008) (a court may consider public records without converting a Rule 12(b)(6) motion into a Rule 56 motion, but may only take judicial notice of facts which are not subject to reasonable dispute). However, even considering these records, the Court finds dismissal not appropriate.

Consistent with the analysis above regarding the policy-based claims, the Court finds it would be premature to determine the agency question at this juncture and that it cannot be decided on the pleadings. The Counterclaim contains sufficient factual allegations to support a claim that Crider and Toledo Insurance were acting as General Star's agents at the time they filled out the application form. Moreover, both cases upon which Plaintiff relies – *Damon's*

10

*Missouri, Inc. v. Davis*, 63 Ohio St. 3d 605 (1992) and *S.E.A., Inc. v. Dunning-Lathrop & Assocs.*, 2004 Ohio App. LEXIS 3734 (Ohio Ct. App. Aug. 5, 2004) – were decided at the summary judgment stage, not the pleadings stage.[5] The Ohio Supreme Court in *Damon's* explained that agency "is usually a question of fact for the jury", but found that it could "determine Davis's capacity as a matter of law because the relevant facts here are not in dispute." 62 Ohio St. 3d at 612. Although the parties here agree that Crider was an independent insurance agent or broker, the Court finds this fact alone does not dictate dismissal of the claim.

As such, the Court denies General Star's Motion to Dismiss Count Four of the Counterclaim.

*Count Five - Agency of AmWINS*

General Star also moves to dismiss Count Five of the Counterclaim – agency of AmWINS. This Count is based entirely on allegations that AmWINS was General Star's agent, and thus that any delay in the transmission of the AmWINS report to General Star "is not the responsibility of [1001 Starr] but is the fault of [General Star] and/or [General Star's] agent." (Doc. 11, at 16). In moving to dismiss, General Star argues 1001 Starr's allegations that AmWINS failed to timely communicate its findings "is irrelevant" as the policy was issued prior to the inspection. In response, 1001 Starr notes that "Plaintiff does not contest [its] assertion that AmWINS was Plaintiff's agent" and points out that AmWINS is identified as the Producer of the policy. (Doc. 22, at 5 n. 1) (citing Doc. 1-1, at 4). The Court agrees with General Star that Count Five fails to state a claim for relief.

---

5. 1001 Starr moves for leave to file a Sur-Reply because General Star's original citation of this case contained a typographical error identifying a party as "S.A.E." instead of "S.E.A.", and the case is "not available through Westlaw." (Doc. 28, at 2). Because the Court finds it would be premature to reach the argument based on this case at the pleadings stage, 1001 Starr's motion for leave is denied as moot.

11

The Counterclaim asserts the application was signed on November 12, 2021 (Doc. 11, at 14), the policy issued became effective November 15, 2021 (Doc. 11, at 9), and AmWINS inspected the property on December 2, 2021 (Doc. 11, at 15). That inspection revealed the upper unit of the property was "a boarding home". (Doc. 1-3, at 3-4). 1001 Starr notes General Star claims it did not receive the report until 55 days later, and that the inspection was conducted approximately 40 days prior to the date of the at-issue property loss. *Id.*

But the inspection at issue occurred *after* the policy was issued. In its opposition brief, 1001 Starr argues "[General Star] expressly communicated to [1001 Starr] that the policy's effectiveness was subject to an acceptable inspection/report completed within 30 days of binding coverage and/or that Plaintiff had the right after issuance of the policy to inspect the property to determine its insurability." (Doc. 22, at 6). Although the latter part of this statement is correct, the former is not. The policy language cited states that General Star has "the right to . . . [m]ake inspections and surveys at any time . ." but that it is "not obligated to make any inspections, surveys, reports or recommendations . . ." (Doc. 1-1, at 7). This language does not make the policy *conditioned* upon an acceptable inspection; it merely provides General Star the right to inspect.

Even if AmWINS was General Star's agent, 1001 Starr has not alleged facts to demonstrate that this inspection – completed after the policy was issued – had any impact on the insurance policy and states a claim for relief. That AmWINS was General Star's agent for some purpose may be part of 1001 Starr's defense to the underlying declaratory judgment action, but as pled, it does not state a separate claim for relief. The Court grants General Star's Motion to Dismiss Count Five of the Counterclaim.

12

The Court denies General Star's Motion to Dismiss Counts One through Four of the Counterclaim and grants the motion as to Count Five of the Counterclaim.

AmWINS Motion to Dismiss Third Party Complaint (Doc. 38)

AmWINS moves to dismiss 1001 Starr's Third-Party Complaint against it. (Doc. 38). It argues the inspection 1001 Starr relies upon was conducted for the benefit of General Star, not 1001 Starr, and 1001 Starr has not alleged any facts establishing a relationship between AmWINS and 1001 Starr that would give rise to any duty. *Id.* at 3. 1001 Starr opposes and takes issue with an incorrect citation in AmWINS's motion.[6] That is, 1001 Starr contends AmWINS has not established – based on the citations in its motion – that 1001 Starr's Third Party Complaint fails to state a claim upon which relief can be granted. *See* Doc. 50, at 3 ("Whatever may be the case concerning the proposition that AmWINS was solely the agent of General Star, nothing in the pleadings or exhibits submitted to date, especially those referenced by AmWins in its motion, confirms that relationship such that AmWINS is entitled to the relief it seeks."). In its reply, AmWINS notes that the Third-Party Complaint, by way of its incorporation of the allegations of 1001 Starr's Counterclaim, alleges AmWINS "was the agent of the Plaintiff [General Star]" and otherwise contains no factual allegations establishing a relationship or duty owed to 1001 Starr. (Doc. 53, at 1) (quoting Doc. 11, at 14).

The Court agrees with AmWINS. Although the Third-Party Complaint contains legal conclusions regarding a duty owed by AmWINS to 1001 Starr, it contains no factual allegations in support. (Doc. 11, at 20-21). *See, e.g., Gilliam v. Crowe*, 2016 WL 3434026, at *2 (S.D. Ohio) ("The allegation that Busy Bee 'owed a duty to Plaintiff to use ordinary care for his safety while

---

6. AmWINS incorrectly cited "Amwins Underwriting Survey Report, Doc. 1-3, at PageID #14". (Doc. 38, at 3). The correct citation, as AmWINS points out in Reply, was Doc. 1-3, at pageID 143.

towing his vehicle' is a legal conclusion couched as a factual allegation, which the Court need not accept as true on a motion to dismiss." (citing *Twombly*, 550 U.S. at 555)).

The Court therefore grants AmWINS's motion to dismiss 1001 Starr's Third-Party Complaint against it.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that General Star's Motion to Dismiss 1001 Starr's Counterclaim (Doc. 16), be and the same hereby is, GRANTED IN PART and DENIED IN PART as described herein; and it is

FURTHER ORDERED that AmWINS's Motion to Dismiss 1001 Starr's Third-Party Complaint (Doc. 38), be and the same hereby is, GRANTED.


  s/ *James R. Knepp II*
UNITED STATES DISTRICT JUDGE